IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HECTOR VARGAS,<br><br>      PLAINTIFF,<br>  v.<br><br>SCHNEIDER NATIONAL CARRIERS, INC.,<br><br>      DEFENDANT. | Civil Action No.: _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT AND JURY DEMAND**

Plaintiff Hector Vargas, by and through his undersigned attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

**PRELIMINARY STATEMENT**

1. This is an action for an award of damages, punitive damages, attorneys' fees and other relief on behalf of Plaintiff Hector Vargas, a former employee of Schneider National Carriers, Inc. ("Schneider" or "Defendant"). Mr. Vargas was discriminated against and harassed on the basis of his disability and/or perceived disability, and was retaliated against for seeking accommodations of his disability, culminating in his wrongful termination.

2. This action is filed pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA").

**JURISDICTIONAL STATEMENT**

3. This Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

6. All conditions precedent to the institution of this suit have been fulfilled. On March 9, 2020, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). On February 1, 2021, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice. With regard to Plaintiff's claims pursuant to the Pennsylvania Human Relations Act, it has been more than one year since Plaintiff dual-filed his Charge of Discrimination as a Complaint with the PHRC.

## VENUE

7. This action properly lies in the Middle District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8. This action properly lies in the Middle District of Pennsylvania because the claims and significant activities associated with those claims arose in this judicial district.

## PARTIES

9. Plaintiff Hector Vargas is an adult male citizen and resident of Newark, New Jersey and the United States of America.

10. Mr. Vargas is a qualified individual with a disability within the meaning of the ADA.

11. Mr. Vargas' disability affects a major bodily function and substantially limits one or more major life activities.

12. Mr. Vargas' disability has affected him for a period far in excess of six months.

13. Defendant is a is a provider of truckload, intermodal and logistics services, with a location at 1 Schneider Drive, Carlisle, Pennsylvania 17013, where Plaintiff was employed.

14. At all relevant times, Defendant is and has been an employer employing more than one hundred (100) employees.

15. At all relevant times, employees of Defendant acted as agents and servants for Defendant.

16. At all relevant times, employees of Defendant were acting within the scope of their authority and in the course of their employment under the direct control of Defendant.

17. At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

18. At all relevant times hereto, Plaintiff Hector Vargas was an "employee" of Defendant within the meanings of the laws at issue in this suit and is accordingly entitled to the protection of said laws.

19. At all relevant times hereto, Defendant was an "employer" and/or "person" under the laws at issue in this matter and is accordingly subject to the provisions of said laws.

20. During his employment, Defendant regarded Mr. Vargas as disabled.

21. This cause of action arose out of transactions or occurrences that took place in whole or in part in Carlisle, Pennsylvania.

22. Defendant conducts substantial business within Carlisle, Pennsylvania.

23. This Honorable Court has personal jurisdiction over the Defendant.

**FACTS**

24. Beginning in May 2019, Mr. Vargas was employed as a delivery driver for Schneider.

25. Mr. Vargas worked primarily from Defendant's Carlisle, Pennsylvania location, which is located at 1 Schneider Drive, Carlisle, Pennsylvania 17013.

26. While employed by Defendant, Mr. Vargas performed his duties in an excellent and hardworking manner.

27. Despite his loyalty and consistent performance, Mr. Vargas was discriminated against and harassed on the basis of his disability or because he was perceived as disabled, was retaliated against for seeking accommodation for his disability, including seeking medical leave, and was wrongfully terminated as a result of such discrimination and retaliation.

28. Mr. Vargas received his offer of employment from Defendant on or about May 7, 2019.

29. Mr. Vargas' employment began as a three-week orientation.

30. Two of the three weeks consisted of classroom training.

31. The final week was to be spent on the road with a trainer, with Mr. Vargas to be performing eighty percent (80%) of the work.

32. As part of his orientation, Mr. Vargas was assigned a trainer, Training Engineer Anthony Baver.

33. Among other things, in addition to the actual work, Mr. Baver demanded that Mr. Vargas perform 2-2.5 hours of pre-trip work each day.

34. Approximately 3-4 days into the final training week on the road with Mr. Baver, while driving, Mr. Vargas began to experience symptoms of a stroke, including loss of vision and numbness in his hands.

35. Mr. Vargas reported these symptoms to Mr. Baver, but Mr. Baver directed him to keep driving.

36. Mr. Vargas continued driving as directed, but when his symptoms worsened, he again reported the alarming symptoms to Mr. Baver.

37. Mr. Baver finally agreed to take over the last few miles of driving.

38. Mr. Vargas complained to Defendant and was assigned a new trainer.

39. Mr. Vargas was told that he must start over his week of training on the road.

40. Mr. Vargas completed his training with the new trainer and received his Certificate of Training on May 24, 2019.

41. Despite his successful completion of training, Defendant thereafter retaliated against Mr. Vargas for his complaints and medical issues during training.

42. For example, although Defendant had promised Mr. Vargas that he would be able to return home on weekends, Defendant refused to permit him to go home on weekends.

43. In addition, upon being transferred to a new account, the Lowe's account, Defendant retaliated against Mr. Vargas by giving him impossible work assignments that could not possibly be completed by the demanded deadline.

44. Notwithstanding the foregoing, Mr. Vargas performed his duties in a dedicated and professional manner.

45. In or about June or July 2019, Mr. Vargas requested that he be permitted to return home, not to stay for the weekend, but simply to turn in the keys to his apartment.

46. Defendant allowed him to do so.

47. Mr. Vargas thereafter continued to perform excellently, delivering his loads on time, meeting deadlines, and demonstrating exemplary driving.

48. In or about July 2019, the blower in Mr. Vargas' truck's air conditioning unit broke.

49. Mr. Vargas put in a work order to fix the unit.

50. Mr. Vargas suffers from severe eczema, a disability, which occasionally causes him to break out in a noticeable rash.

51. At times, during more severe outbreaks, Mr. Vargas' rashes may contain pus-filled blisters that are wet and oozing and/or leaking (known as "weeping eczema").

52. Mr. Vargas' eczema gets particularly bad in hot or humid weather.

53. Because it was July, and the air conditioner in his truck was not working, Mr. Vargas' eczema condition flared up.

54. As was often the case in such hot conditions, the rash was particularly noticeable, contained pus-filled blisters, and was leaky and/or oozing.

55. Mr. Vargas contacted Corporate to inform them that he needed to see Defendant physician, as his eczema had flared up and was leaking.

56. Mr. Vargas again requested permission to see Defendant physician to calm his eczema flare up.

57. Finally, on or about July 27, 2019, Defendant directed Mr. Vargas to go to the Emergency Room to see a physician.

58. Although Mr. Vargas went to the Emergency Room as directed, the heat and humidity, combined with the unhygienic conditions of the truck in which Mr. Vargas spent all his time, caused his eczema to worsen.

59. Finally, on or about September 9, 2019, Defendant permitted Mr. Vargas to bring his truck in to get serviced and have the air conditioning unit repaired.

6

60. The following day, Jeffrey Derr, Mr. Vargas' Driver Business Leader, gave Mr. Vargas a new work assignment.

61. Mr. Vargas stated that he had not yet slept, but that he would be happy to do the assignment after he slept in his truck during his federally mandated 10-hour break.

62. Mr. Derr then noticed Mr. Vargas' eczema rash on his arm and demanded to know what it was.

63. Mr. Vargas explained that it was a harmless rash that would soon go away, and that it had resulted from his truck's lack of air conditioning.

64. Mr. Derr insisted that Mr. Vargas had never informed him about this.

65. Immediately thereafter, Mr. Vargas was called into a meeting with Mr. Derr, his supervisor Irini [LNU], and Jeffrey Richter, Division Manager, Carlisle, Pennsylvania Operations Center.

66. At this meeting, Mr. Richter accused Mr. Vargas of being "contagious" and claimed he was putting the lives of Defendant employees at risk.

67. Mr. Richter directed Mr. Vargas not to return to his truck, as he would be ordering a hazmat team to decontaminate the truck.

68. Mr. Richter further stated that Mr. Vargas had to return to the Emergency Room and thereafter seek a shelter.

69. Per Mr. Richter's order, Mr. Vargas returned to the Emergency Room, which cleared him to return to work.

70. Mr. Vargas then returned to Defendant's Carlisle, Pennsylvania office, which told him to call FSSolutions to see if they could assist him.

71. Mr. Vargas did as directed.

72. FSSolutions instructed Mr. Vargas to seek leave under the Family and Medical Leave Act ("FMLA") for his disability, to allow his eczema flare up time to heal.

73. FSSolutions also sent Mr. Vargas to the Saint Michaels Medical Center in Newark, New Jersey.

74. The following day, Irini contacted Mr. Vargas, demanding to know why he was in New Jersey, and told him that he would be terminated for failing to follow orders.

75. Mr. Vargas explained that he was only in New Jersey because he had gone to FSSolutions, per Defendant's instructions, which in turn instructed Mr. Vargas to go to New Jersey to be seen at Saint Michael's Medical Center.

76. Irini then informed Mr. Vargas that a hazmat team had been retained to decontaminate Mr. Vargas' truck, and that if he did not return to Carlisle, Pennsylvania immediately and collect his belongings, all of his belongings would be thrown out.

77. Per Irini's orders, Mr. Vargas immediately returned to Carlisle, Pennsylvania.

78. Mr. Vargas requested use of the fax machine to send paperwork he had received from Saint Michael's Medical Center to FSSolutions.

79. Although Mr. Vargas' FMLA request was denied, as he had not yet been employed by Defendant for the requisite amount of time, by letter dated September 12, 2019, Defendant acknowledged that, beginning on September 10, 2019, Mr. Vargas would be off work and on medical leave for his disability until he was cleared to return to work.

80. On September 23, 2019, FSSolutions cleared Mr. Vargas to return to work.

81. The following day, on September 24, 2019, upon calling Defendant to seek his next assignment, however, Mr. Vargas was terminated.

82. The sole grounds for his termination, as stated by Mr. Derr, was that Mr. Vargas was "not a fit" for Defendant.

83. Mr. Vargas was never told that he had performance issues or poor communication skills.

84. The above facts strongly suggest that Mr. Vargas was terminated on the basis of his disability and in retaliation for seeking accommodation.

85. Mr. Vargas was an excellent and hardworking employee who was terminated only after Defendant noticed his unsightly skin condition and requested to take some time off to recover.

86. Although this skin condition was Mr. Vargas' medical condition and disability, Mr. Vargas was falsely accused of being "contagious" and not permitted to return to work.

87. Immediately upon being cleared to return to work, Mr. Vargas was fired.

88. Mr. Vargas' termination was pretextual.

89. Mr. Vargas' termination was wrongful.

90. Despite his loyalty, dedication and consistently excellent performance, given his treatment during his employment with Schneider (including, but not limited to, his wrongful termination), Schneider harassed, discriminated and retaliated against Mr. Vargas on the basis of his disability or perceived disability, and retaliated against him for seeking accommodations.

91. Based on the foregoing, Mr. Vargas was discriminated against and harassed on the basis of his disability or perceived disability and retaliated against for seeking reasonable accommodation, including seeking medical leave, in violation of the ADA and the PHRA.

92. Mr. Vargas has suffered mental anguish and severe emotional distress as a direct and proximate result of the actions and inactions of Defendant.

93. Defendant and its agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Mr. Vargas severe emotional distress.

94. Mr. Vargas has suffered financial losses, which include, among other things, lost wages, and an obligation for attorneys' fees and costs of bringing suit, as a direct and proximate result of the actions and inactions of Defendant.

## COUNT I
### The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

95. Plaintiff Hector Vargas repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

96. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the Americans with Disabilities Act.

97. In discriminating against and harassing Mr. Vargas on the basis of his disability and/or because Defendant regarded Mr. Vargas as disabled, in retaliating against Mr. Vargas for seeking reasonable accommodation, and in terminating Mr. Vargas, Defendant violated the ADA.

98. Said violations were intentional and willful.

99. Said violations warrant the imposition of punitive damages.

100. As the direct and proximate result of Defendant's violation of the Americans with Disabilities Act, Plaintiff Hector Vargas has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

## COUNT II
### Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

101. Plaintiff Hector Vargas repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

102. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the Pennsylvania Human Relations Act.

103. In discriminating against and harassing Mr. Vargas on the basis of his disability and/or because Defendant regarded Mr. Vargas as disabled, in retaliating against Mr. Vargas for seeking reasonable accommodation, and in terminating Mr. Vargas, Defendant violated the Pennsylvania Human Relations Act.

104. As the direct and proximate result of Defendant's violation of the Americans with Disabilities Act, Plaintiff Hector Vargas has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

## PRAYER FOR RELIEF

105. Plaintiff Hector Vargas repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Hector Vargas respectfully requests that this Court enter judgment in his favor and against Defendant Schneider National Carriers, Inc., and Order:

  a. Appropriate equitable relief, including reinstatement or front pay;

  b. Defendant to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination and wrongful termination;

c. Defendant to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of Defendant's unlawful conduct;

d. Defendant to pay Plaintiff punitive damages;

e. Defendant to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

f. Defendant to pay Plaintiff's costs of bringing this action, including, but not limited to, Plaintiff's attorneys' fees;

g. Plaintiff be granted any and all other remedies available under the ADA and PHRA; and

h. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury as to all issues so triable.

*/s/ Christopher A. Macey, Jr.*
Christopher A. Macey, Jr., Esquire
Bell & Bell LLP
One Penn Center
1617 JFK Blvd. – Suite 1254
Philadelphia, PA 19103

*Attorneys for Plaintiff Hector Vargas*

Dated: April 30, 2021